IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TIFFANY ROWE, et al., } | |
| } | |
| Plaintiffs, } | |
| } | CIVIL ACTION NO. |
| v. } | 09-AR-1198-S |
| } | |
| LIFESOUTH COMMUNITY BLOOD } | |
| CENTERS, INC., } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Plaintiffs, Tiffany Rowe ("Rowe") and Linda Williams ("Williams") (collectively the "named plaintiffs"), sued defendant LifeSouth Community Blood Centers, Inc., ("LifeSouth"), alleging various violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). After filing several consents by opt-in plaintiffs, the named plaintiffs filed a motion requesting a conditional certification as a collective action and facilitation of the notice as provided by 29 U.S.C. § 216(b). For the reasons stated below, the named plaintiffs' motion will be partially granted, and an appropriate class notice will be approved.

**FACTS**

LifeSouth is a not-for-profit community blood center operating in Florida, Georgia and Alabama, with corporate offices in Gainesville, Florida. LifeSouth collects blood through donations at its centers and through blood drives. It collects a majority of its blood through the use of "Bloodmobiles", which are buses that

serve as blood collection units. Bloodmobiles leave from LifeSouth centers and engage in blood collection in areas surrounding their centers. Each Bloodmobile is staffed with employees from LifeSouth's Donor Services Department. Typically, each Bloodmobile will have a Mobile Team Captain ("Team Captain"), a Donor Services Team Lead ("Team Lead"), and one or more Donor Services Specialist ("DSS"). Prior to 2008, the job title for Team Captains was Donor Specialist Mobile Supervisor. On January 12, 2009, LifeSouth changed the job of Team Captain from a non-exempt, hourly position under the FLSA, to a salaried, FLSA exempt position.

Bloodmobiles are not equipped with a time clock. Therefore, an employee working on a Bloodmobile cannot clock out for lunch. It is LifeSouth's policy, as a substitute for clocking in and out for lunch, automatically to deduct fifteen (15) minutes of pay on each day that an hourly Bloodmobile employee works more than six (6) hours without clocking in and out more than once. Hourly employees who do not work on Bloodmobiles are not deducted this fifteen (15) minutes for lunch. By rule a Bloodmobile employee who is working so as to be unable to take a full fifteen (15) minute lunch break is obligated to notify the supervisor at the end of the day as to any time worked during this fifteen minute lunch break.

## ANALYSIS

Plaintiffs contend that each plaintiff, along with many currently unidentified Bloodmobile employees, worked through lunch

"virtually every work day" in order to complete their work duties, but were still subjected to the automatic fifteen (15) minute lunch deduction. (Pl.'s Br. in Supp. at 2). Because of this, plaintiffs allege that they frequently worked more than forty (40) hours in a week, but were not paid for their overtime. Plaintiffs contend that LifeSouth's failure to pay the overtime is a violation of the FLSA. Pursuant to FLSA § 216(b), plaintiffs seek to conditionally certify a class of all current and former hourly wage LifeSouth employees who have been employed within the three year period pre-dating the filing of this case. (Pl.'s Mot. at 1). Under the FLSA, members of such a conditionally certified class would receive notice of their right to opt-in as plaintiffs. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). Plaintiffs' original proposed notice included a claim for "off-the-clock" work not related to the automatic lunch deduction. (Pl.'s Mot. at 2). Plaintiffs have since agreed to limit their claims to those relating to the automatic lunch deduction. (Tr. of Hr'g Dec. 7, 2009 at 35-40).

Under the FLSA's collective action provision, "[a]n action ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." *Morgan,* 551 F.3d at

3

1258. The Eleventh Circuit has established a two-step process by which district courts are to manage FLSA collective actions. The first stage is the "conditional certification" or "notice" stage. *Id.* at 1260. The second stage is triggered by a defendant's motion for decertification, at which time the court has a more detailed record and can make a more informed factual determination. *Id.* At both stages, the decision of whether to certify a class, conditional or final, hinges on whether the plaintiffs are "similarly situated". *Id.*

In the "conditional certification" or "notice" stage, the standard for determining similarity is "fairly lenient" and "flexible." *Id.* at 1259 (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218). To meet this low standard, plaintiffs only have to show that there is a "reasonable basis" for their claim that there are other similarly situated employees. *Morgan*, 551 F.3d at 1259. Neither the FLSA nor the Eleventh Circuit has provided a precise definition of the term "similarly situated", but the Eleventh Circuit has given some guidance, holding that a district court should look to whether employees are "similarly situated with respect to their job requirements and with regard to their pay provisions." *Id.* at 1259 (quoting *Dybach v. State of Fla. Dept. Of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Logically, in attempting to determine whether the proposed class is made up of similarly situated employees, the court must also look

to whether the plaintiffs are similarly situated **with respect to the claims being made in the underlying lawsuit.**

This court holds that even under the low threshold set out by *Morgan*, in light of the remaining claims in the underlying lawsuit, plaintiffs' proposed class of "all current and former hourly employees" is overly broad, insomuch as such comprehensive class cannot be similarly situated for notice purposes. However, this court finds that a narrower class of all current and former hourly employees who worked on Bloodmobiles and received an automatic deduction as a substitute for a lunch period does constitute a class of similarly situated employees for the purposes of notice under the FLSA.

Because plaintiffs have abandoned, at least for notice purposes, any contention that LifeSouth failed to pay overtime for "off-the-clock" work aside from the lunch period deduction, the only employees who are "similarly situated" in relation to the underlying lawsuit are those who, in fact, had a lunch period automatically deducted from their time but who worked during it. The only such individuals identified by the plaintiffs are employees who work on Bloodmobiles. Both named plaintiffs and all opt-in plaintiffs worked on Bloodmobiles. It would be a waste of resources, both the court's and the parties', to send notice to "all hourly employees" when the only employees who can truly be "similarly situated" with respect to the alleged violation are

those who worked on Bloodmobiles. Also, because the violations alleged will only apply to Bloodmobile employees that have had automatic lunch deductions, the class should be further limited to all hourly employees who have worked on a Bloodmobile and have actually had an automatic lunch period deducted.

The reduced and refined class of all LifeSouth Bloodmobile employees who have had a lunch period deducted meets the *Morgan* and *Dybach* requirements of similar job requirements and pay provisions. Courts have made it clear that "similar job requirements" does not mean that each member of the class has to hold the exact same job. *Morgan*, 551 F.3d at 1259 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). The employees working on the Bloodmobiles had sufficiently similar job requirements in that they all worked in blood collection on Bloodmobiles that did not have time clocks. The requirement of similar pay provisions is also met, as each class member is an hourly employee who has been subjected to the automatic lunch deduction. Therefore, the class of all hourly Bloodmobile employees who have been subjected to the automatic lunch deduction meets the lenient standard articulated in *Hipp* and *Morgan*.

LifeSouth argues that any class that might be conditionally certified should be further limited so as to exclude Team Captains, because Team Captains are classified as "exempt" employees. While it is true that LifeSouth currently classifies Team Captains as

exempt, it did not begin to do so until January 12, 2009. (Def.'s Br. in Opp'n at 4). Therefore, Team Captains, such as named plaintiff, Rowe, and opt-in plaintiff, Iris Anderson ("Anderson"), who worked for LifeSouth at any point before January 12, 2009, would be classified as "non-exempt" for at least some of the period in question, and would be entitled to notice. Any Team Captain hired after January 12, 2009, has only worked as a salaried employee, and thus would not be included in a conditionally certified class of hourly employees. Also, any Team Captains hired after January 12, 2009 would never have been subjected to the automatic lunch deduction, and would have no grounds to opt-in to the class.

In their complaint the named plaintiffs make a claim that the January 12, 2009, change in status for Team Captains is an "improper exemption" and thus a violation of the FLSA in and of itself. However, they seek only to certify a class of current or former **hourly** employees, a description that would not include Team Captains hired after January 12, 2009. (Pl.'s Mot at 1). Furthermore, plaintiffs do not seek to include the improper exemption claim in their proposed notice. Therefore, the court will treat said claim as abandoned. *See id.* at Ex. A. (Making no mention of an "improper exemption" claim in the proposed description of the

lawsuit).[1]

The inquiry required before conditionally certifying a class does not end with the determination of whether the proposed class is similarly situated. To certify a collective action a plaintiff must also show that other employees actually desire to participate in the lawsuit. *Morgan*, 551 F.3d at 1259; *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362 (M.D. Ala. 1999). To meet this burden, a plaintiff files written notices of consent to join the lawsuit from other employees before moving for conditional certification. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1316 (M.D. Ala. 2002). To date, eleven (11) individuals have filed consents to opt-in to the lawsuit (the "opt-in plaintiffs"), to go along with the two (2) named plaintiffs. All plaintiffs worked for LifeSouth in Donor Services at some time as either DSSs, Team Leads, or Donor Specialist Mobile Supervisors/Team Captains. In other words, all plaintiffs worked on Bloodmobiles. Two of the opt-in plaintiffs ended their employment with LifeSouth more than three years before their opt-in date, and are thus barred by the statute

---

[1] On January 6, 2010, LifeSouth filed a "supplemental evidentiary submission and memorandum of law", arguing *inter alia* that because of newly discovered evidence only one (1) plaintiff with an "improper exemption" claim remained, and therefore such a claim should not be certified. As discussed above, plaintiffs do not seek to include such a claim in their notice or certify a subclass of "Team Captains" at this time, and the court will not do so. Therefore, LifeSouth's supplement does not affect the analysis in this opinion.

of limitations. (Def.'s Br. in Opp'n at 10-13). One more opt-in plaintiff never had an automatic lunch deduction taken while she worked at LifeSouth. *Id.* at 15. Thus, remaining in the reduced present class are the two named plaintiffs and eight (8) opt-in plaintiffs. Of the remaining plaintiffs, eight (8) are or were employed at LifeSouth's Birmingham, Alabama branch, and two (2) are or were employed at LifeSouth's Wiregrass, Alabama branch.

In deciding whether plaintiffs have met their burden of showing that other employees desire to opt-in, the court must weigh the number of consents filed against the size and geographic disparity of the entire class. *See Rodgers v. CVS Pharmacy, Inc.*, No. 05-770, 2006 WL 752831, at *4 (S.D. Fla. Mar. 22, 2006)(refusing to conditionally certify class when there were only two opt-in plaintiffs out of over 250,000 employees in thirty-six (36) states). In this case there are a total of ten (10) plaintiffs employed at two (2) different LifeSouth branches, both located in Alabama. As previously discussed, LifeSouth operates in three states, and the refined class of Bloodmobile workers would encompass approximately two-hundred (200) to three-hundred (300) current or former employees. (Tr. of Hr'g Dec. 7, 2009 at 5). The plaintiffs in this case have met their burden of showing that other employees desire to opt-in. Ten (10) plaintiffs out of a maximum potential class of three-hundred (300) is a ratio sufficient to meet the lenient standard of the "notice" phase. While there are

now only opt-in plaintiffs from two branches, and those branches are in the same state, there is at least a showing of interest in the lawsuit beyond a single branch. With LifeSouth being a regional employer operating in three states, this court finds that issuing a notice in all three states is appropriate.

Finally, the parties disagree about whether the conditional certification and notice should include LifeSouth employees for the three years prior to the date of suit or the period should be limited to two years. The statute of limitations for violations of the FLSA is generally two years. 29 U.S.C. § 255(a) (2006). However, if a plaintiff's claim arises from a willful violation, the statute of limitations period is extended to three years. *Id.* Plaintiffs have alleged willfulness in this case. LifeSouth argues that plaintiffs have not provided sufficient evidentiary support for a claim of willfulness. Courts considering this issue have routinely held that such an argument is not appropriate for the initial certification phase, but rather is suited for the decertification phase or inclusion in a motion for summary judgment. *See White,* 204 F. Supp. 2d at 1318  n. 9. In the conditional certification phase, when an allegation of willfulness has been made, courts have generally used the three-year temporal period. *See id.* LifeSouth has cited no case in which a district court has limited its conditional certification to a two-year period when there has been an allegation of willfulness. This court

agrees that the allegation of willfulness gets the plaintiffs, at least in this initial stage, the three-year period. Furthermore, were this court required to find whether there is a scintilla of evidence to support a claim of willfulness at this early stage in the proceedings, it would find the existence of a scintilla. Plaintiffs have alleged a systematic FLSA violation stemming from a pay policy intentionally implemented by LifeSouth. At this "lenient" stage of the proceedings, this allegation is enough to support notice to employees over a three-period. While the three-year period will be used for notice purposes, it is necessary to explain the distinction between the two-year and three-year periods to potential plaintiffs. Therefore, the distinction between the two periods, either of which may ultimately be used, will be included in the notice. The question of whether a violation can be willful as to one plaintiff and not as to another will be dealt with if and when it arises, as will the fixing of a date upon which LifeSouth was first willful, if it ever was, in its violation, if it violated the FLSA.

   DONE this 11th day of January, 2010.


_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE